In re Adela L. HOLZER, Bankrupt.

Chester B. SALOMON, as Trustee of the Estate of Adela L. Holzer, Bankrupt, Plaintiff,

v.

Adela L. HOLZER, Defendant.

Bankruptcy No. 77 B 1466 (EJR).

United States Bankruptcy Court, S. D. New York.

Aug. 4, 1982.

Chester B. Salomon, P.C., New York City, for trustee/plaintiff.

Leinwand, Maron, Hendler & Krause, New York City, for bankrupt/defendant.

MEMORANDUM TO ACCOMPANY FINDINGS OF FACT AND CONCLUSIONS OF LAW

EDWARD J. RYAN, Bankruptcy Judge.

The court is fully aware of the mandate of the Supreme Court that a trial court cannot blindly accept a party's proposed findings of fact and conclusions of law. However, when the findings proposed are consistent with the record and the conclusions proposed are agreeable with the law, no useful purpose would be served by the court's rewriting the same. See, United States v. El Paso Natural Gas Co., 376 U.S. 651, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964). Accordingly, the trustee's proposed findings of fact and conclusions of law are adopted by the court.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT

Chester B. Salomon, as Trustee of the above-captioned bankrupt, plaintiff, having filed a Complaint dated April 28, 1978 objecting to the bankrupt's discharge, and the bankrupt having answered, and a trial having taken place on September 1, 1981, September 22, 1981 and April 29, 1982, and after considering the admissible testimony and reviewing the evidence,

NOW, THEREFORE, upon the Complaint, the Answer and the Trial Record, and after due deliberation, the Court hereby finds, determines, adjudges and decrees as follows:

## I. FINDINGS OF FACT

1. Plaintiff is the duly qualified and acting Trustee of the bankrupt estate. On July 1, 1977 an involuntary petition was filed against Adela L. Holzer. She was adjudicated a bankrupt on August 11, 1977. Plaintiff was elected Trustee on September 30, 1977, has qualified and is currently acting in that capacity. [Complaint ¶ 2]

2. Prior to July 1, 1977, the bankrupt was in the business of arranging investments for investors in various deals in Spain, Indonesia and Venezuela. She was also involved in land purchases in Spain and investments in theatrical productions in New York. (Tr. 53) With respect to the Spanish land deals, the bankrupt's father, Felipe Sanchez LaFora, purchased real estate for various investors of the bankrupt. The bankrupt does not have any records of the purchases made by her father in Spain, but testified that her father may have records. (Tr. 33–34)

3. Prior to July 1, 1977, the bankrupt was affiliated with at least three foreign corporations. Dinars International Corporation and Dinars Overseas Corporation were Indonesian corporations. Dinars Trading Corporation was a Panamanian corporation. (Tr. 6–7)

4. In the winter of 1976–1977, Mrs. Holzer was being sued by several investors as a result of their investments with her. In the spring of 1977, the New York State Attorney General's office was investigating Mrs. Holzer's business transactions. (Tr. 19, 136) In February and March, 1977 the bankrupt transferred to her then husband her interests in homes owned by the bankrupt and her husband in New York City and Locust, New Jersey. (Tr. 19)

5. Mrs. Holzer testified that in June or July of 1977, in New York, Mrs. Holzer gave originals of her business and banking records to Mr. Hamzah, an Indonesian citizen visiting the United States, to take back to Indonesia for the putative purpose of delivering those records to Mrs. Gani, an individual with whom the bankrupt was then in litigation. (Tr. 122–124, 135–136) The bankrupt's originals of banking records were not available for inspection by the Trustee's accountants. (Tr. 57–60) These records included banking records of Dinars International Corporation and also various agreements between certain investors and the bankrupt, together with checking records reflecting the amounts paid to investors. (Tr. 122–124)

6. By application dated January 26, 1978, the Trustee commenced a proceeding in the Bankruptcy Court to direct the bankrupt to execute and deliver powers of attorney to the Trustee so as to enable him to investigate foreign bank accounts and other assets located outside the United States as listed on the bankrupt's Schedules. (Exhibit 7) By Order dated February 27, 1978 the Court granted the Trustee's application. The bankrupt appealed this Order to the United States District Court, which remanded the proceeding to the Bankruptcy Court for a new evidentiary hearing. After a hearing in the Bankruptcy Court on August 4, 1978 and promulgation of Findings of Fact and Conclusions of Law, dated August 25, 1978, on October 12, 1978 an order was entered directing the bankrupt to execute the powers of attorney. The bankrupt appealed the October 12, 1978 order and, after a hearing on the appeal in the District Court on January 2, 1979, an order directing the bankrupt to execute the powers of attorney was signed on January 12, 1979 by District Judge Henry F. Werker. (Exhibit 11) On January 31, 1979, the bankrupt executed and delivered said powers of attorney.

7. Prior to July 1977, the bankrupt maintained a bank account No. 204090–278 in the name of Adela Sanchez Duchin at Banco Espanol de Credito in Malaga, Spain. (Tr. 29, 37–38, Exhibits 5 & 7) On or about January 3, 1979, $1,500 was transferred from Banco Espanol de Credito to the bankrupt's account at Manufacturers Hanover Trust maintained in the name of Adela Lafora. The transfer was made pursuant to instructions contained in a letter dated December 21, 1978 (Exhibit 4) signed by the bankrupt. Said transfer was discovered during the Trustee's investigation of the bankrupt's foreign bank account. (Tr. 78–81)

8. According to expert testimony, the financial records necessary to ascertain the financial condition of the bankrupt include:

a. a record of cash receipts and the source of the receipts;

b. a record of cash disbursements and the disposition of funds;

c. a general ledger;

d. subsidiary records showing what is due to or from investors;

e. supporting records of the land deals, purchase and sale agreements, deeds, closing statements and mortgage statements;

f. financial statements of the corporations; and

g. bank statements.

(Tr. 55–56)

9. The bankrupt turned over to the Trustee certain correspondence and records of transactions with the investors-creditors. She also turned over files relating to theatrical investments. (Tr. 57) Through other means the Trustee was able to obtain copies of certain bank records. (Tr. 61) The Trustee was given access to records of the bankrupt and records kept by the bankrupt's accountants, Davies & Davies, at the offices of New York State Attorney General and the Securities and Exchange Commission turned over to these agencies during their respective investigations of the bankrupt's business affairs. (Tr. 57–60)

10. Even with the assistance of certified public accountants retained by the Trustee the financial condition of the bankrupt could not be ascertained from her records. (Tr. 61–62)

## II. CONCLUSIONS OF LAW

A. The bankrupt knowingly and fraudulently concealed assets of the estate and thereby committed an offense punishable by imprisonment as provided under 18 U.S.C. § 152.

B. The bankrupt failed to keep books and records from which her financial condition could be ascertained.

C. The bankrupt failed to preserve books and records from which her financial condition could be ascertained.

D. The bankrupt concealed books and records from which her financial condition could be ascertained.

E. The bankrupt concealed assets of the estate subsequent to the first day of the twelve months preceding filing of the bankruptcy petition with intent to hinder, delay or defraud her creditors.

## III. JUDGMENT

The Bankrupt be, and she hereby is, denied a discharge in bankruptcy pursuant to § 14(c)(1), (2) and (4) of the Bankruptcy Act (Repealed 1978).